**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**RANDALL LAMONT ROLLE,**

      **Plaintiff,**

**vs.**                            **Case No. 4:06cv401-RH/WCS**

**MARTY WEST,
Deputy United States Marshal, and
MIKE WOMBLE,
Deputy United States Marshal,**

      **Defendants.**

_____/

**<u>FOURTH REPORT AND RECOMMENDATION</u>**

This is a *Bivens*[1] action filed pursuant to 28 U.S.C. § 1331.  Doc. 39 (third amended complaint).  Plaintiff, a state prisoner, sues Marty West and Mike Womble in their individual capacities for damages for their actions as Deputy United States Marshals arising from a search and seizure they executed when they arrested Plaintiff on arrest warrants on October 25, 2002.  *Id.*  The location of the arrest and search was 10264 F. A. Ash Way, Tallahassee, Florida.

_____

[1] <u>Bivens v. Six Unknown Agents</u>, 403 U.S. 388, 390 n.2, 91 S.Ct. 1999, 2003 n.2, 29 L.Ed.2d 619 (1971).

Pending is Defendant West's motion to dismiss or for summary judgment.  Doc. 116.  This motion is supported by a statement of facts, doc, 117, and a memorandum, doc. 118.  Also pending is Defendant Womble's motion to dismiss or for summary judgment.  Doc. 120.  The motion is likewise supported by a statement of facts, doc. 122, and a memorandum, doc. 121.  An order was entered advising Plaintiff of his responsibilities with respect to responding to motions for summary judgment, and a date was set for taking the motions under advisement.  Doc. 128.  Plaintiff filed a response. Doc. 134.

**The third amended complaint, doc. 39, as modified by docs. 36 and 40**

The court has dismissed all claims against the "United States Marshals Offices, Inc."  Doc. 36, p. 8, ¶ 2.  The complaint is limited to damages only, and no claims are permitted that seek damages for use of evidence against Plaintiff that resulted in a criminal conviction or probation revocation, or that arise from Plaintiff's incarceration for a criminal conviction or probation revocation that has not been vacated.  *Id.*, ¶¶ 3 and 4. The *only* remaining claim is any claim "seeking an award of damages for the search and seizure at issue separate and apart from any use of the evidence in the proceedings against Mr. Rolle and separate and apart from his incarceration."  *Id.*, ¶ 5.

Plaintiff alleges in his third amended complaint that on October 25, 2002, four state warrants were issued for his arrest for attempted murder (two counts), possession of a firearm, and possession of cocaine, and the United States Marshal's Task Force executed them at 10264 F. A. Ash Way in Tallahassee, Florida.  Doc. 39, p. 6 (p. 8 on ECF, the electronic docket).  Defendants West and Womble were on the Task Force executing these arrest warrants.  *Id.*  Plaintiff alleges he was sleeping on the couch,

jumped up when the officers forced entry, and hid in the attic.  *Id.*  He was located and

the officers "requested" Plaintiff to climb down, which he did.  *Id.*  He was asked

whether he had any weapons, and he alleges that he said no.  *Id.*  He asserts that he

was arrested and "no weapon was found in the attic or in the laundry room."  *Id.*  He

asserts that while he was in custody in the car outside, Defendants reentered his house

and searched.  *Id.*  The officers found a 12 gauge shotgun, a 9 mm pistol, and a brown

paper bag.  *Id.*, p. 6b (p. 9 on ECF).  Plaintiff alleges he did not consent to a search, and

was not shown a search warrant.  *Id.*  Plaintiff alleges that later he was told by Aaron

Furgesson [sic] and Roy Rolle at the Leon County Jail that the Marshals had

> ruined the home with their search.  They both said that chairs and sofas
> had been turned over, cloths [sic] had been removed from closets, dresser
> draws [sic] had been emptied, furniture had been placed in the middle of
> the rooms, and everything had been out of place.

*Id.*, p. 7 (p. 9 on ECF).  Plaintiff seeks damages against Defendants for a warrantless

search.  *Id.*, p. 6b (p. 10 on ECF).  He contends that Defendants were limited in their

search to the area immediately adjacent to the person arrested.  *Id.*, p. 7 (p. 12 on

ECF).

**Procedural history**

        This case has a lengthy procedural history.  On October 24, 2006, the court

adopted my first report and recommendation, doc. 17, and dismissed the complaint.

Doc. 23.  The Eleventh Circuit remanded.  Doc. 34.  The court found Plaintiff's first

amended complaint to be barred by <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S.Ct.

2364, 2372, 129 L.Ed.2d 383 (1994), as this court had ruled.  *Id.*, p. 7.  The Eleventh

Circuit held, however, that Plaintiff should have been permitted to file his second

amended complaint at least as to claims against Marshals West and Womble, finding

that Plaintiff no longer sought to invalidate his convictions, and noted that he had not

sufficiently alleged the connection between the search and seizure (which gives rise to

these § 1983 claims) and his convictions.  *Id.*, pp. 9-10 ("we cannot say that Rolle's

success on his second amended complaint would *necessarily imply* the invalidity of the

criminal judgment revoking his probation and/or his conviction and sentences on the

charges he claims resulted from the challenged evidence.").

      The court remanded the case to me with instructions.  Doc. 36.  The court

carefully set forth Plaintiff's allegations and claims.  *Id.*, pp. 4-5.  The court then said:

> As these quotations make clear, Mr. Rolle's second amended complaint
> repeatedly attacks the use of the seized evidence in proceedings that led
> to his incarceration and seeks an award of damages for every day Mr.
> Rolle has been incarcerated.  The second amended complaint makes no
> explicit demand for any other damages.  I nonetheless construe the
> second amended complaint as seeking an award of damages for the
> search and seizure separate and apart from any use of the evidence in the
> proceedings against Mr. Rolle and separate and apart from his
> incarceration.  I do *not* read the Eleventh Circuit opinion as establishing
> that Mr. Rolle can properly assert a claim for damages for his
> incarceration.  Nor do I read the Eleventh Circuit opinion as establishing
> that Mr. Rolle can challenge in this action the state court's decision to
> admit evidence; under the Rooker-Feldman doctrine, federal district courts
> do not have jurisdiction over civil actions challenging state court decisions.
> *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed.
> 362 (1923); *District of Columbia Court of Appeals v.Feldman*, 460 U.S.
> 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

*Id.*, pp. 5-6.  Plaintiff was permitted to file the second amended complaint, many

portions were stricken, and the only claim remaining in the second amended was the

claim against Marshals West and Womble "seeking an award of damages for the search

and seizure at issue separate and apartment from any use of the evidence in the

proceedings against Mr. Rolle and separate and apart from his incarceration." *Id.*, pp. 8-9.

I ordered Plaintiff to file a third amended complaint, omitting that which the court had stricken.  Doc. 38.  Plaintiff filed a third amended complaint.  Doc. 39.  I recommended that it be dismissed for failure to comply with this court's order.  Doc. 40.  The court found that Plaintiff had not complied with my order to amend, but determined that dismissal was not yet warranted.  Doc. 46 (adopting the report and recommendation, allowing the third amended complaint to be filed, but again striking all claims except those "asserting and supporting search-and-seizure claims against the individual defendants").  The matter was remanded.  *Id.*  Service of the third amended complaint was ordered.  Doc. 49.

**Related §2254 habeas litigation**

In case number 4:06CV452-SPM/WCS, Plaintiff challenged his conviction for possession of a firearm as a convicted felon, state case number 2002-CF-4016.  As set forth in the report and recommendation there:

> Petitioner presents two claims.  First, he contends his attorney was ineffective for failing to file a motion to suppress evidence seized in two houses during a search without a warrant on October 25, 2002.  The residences were 1500 Cleveland Street, Tallahassee, Florida, 32310, and 10264 F. A. Ash Way, Tallahassee, Florida, 32311.  Second, he contends his plea was involuntary because he was advised by his attorney that he still could appeal this search issue but failed to preserve the search issue by filing a motion to suppress.
>
> Petitioner's factual allegations are difficult to follow.  The gist of his claim appears to be that the first search was based upon evidence supplied to the police by Petitioner's brother, Ronald Rolle, and his brother's girlfriend, Nicole Robinson, that Petitioner had stolen $8,000 through identity theft.  Doc. 1, p. 4.  Petitioner represents that the police were investigating a "shot gun wound," and we find that the wound was

suffered by his brother.  *Id.*  The shooting was allegedly in retaliation for the brother and his girlfriend reporting identity theft by Petitioner  *Id.* Ronald Rolle allegedly told police officers that he was "the only renter on the lease" to 1500 Cleveland Street, and he "gave consent to enter."  *Id.* Petitioner contends this was false in that Ronald Rolle was not lessee and his driver's license listed an Ocala address.  *Id.*  Later, Petitioner makes reference to a "stolen house key" but does not explain the relevance of this.  *Id.*, p. 4a.  He asserts that Ronald Rolle did not have authority to consent to this search of the first house.  *Id.*, p. 4 b.  The search of 1500 Cleveland Street allegedly took place based upon this consent, without a warrant.  *Id.*, p. 4.  Petitioner contends the search of 1500 Cleveland Street was invalid because without a warrant or a valid consent.

Petitioner asserts that he was then arrested at 10264 F. A. Ash Way by the United States Marshal's violent fugitive TASC force.  The firearm that is the subject of Petitioner's conviction was found during this arrest.  Petitioner contends that the firearm was unlawfully obtained and should have been suppressed.  *Id.*, p. 4a.

Doc. 32 in that case, pp. 7-8.  I recommended that the court find that Plaintiff had no

Fourth Amendment claim to make as to the search of either house, and wrote:

Petitioner has also failed to show that the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).[2]  Petitioner has failed to show anything wrong with the search of 1500 Cleveland Street.  Ronald Rolle lived there.  He had just been shot, and he had just told the police officer who arrived on the scene that Petitioner shot him.  He made the same statement in written form at the hospital.  He gave the key to the residence to the police.  Petitioner's argument about identity theft is completely beside the point.  Even if Petitioner had been wrongly accused of identity theft, he shot his brother.[2] Consent to search 1500 Cleveland Street existed.  The officers did not need a search warrant.

Petitioner argues that the search of the F. A. Ash Way residence was unlawful as well, but he has produced no evidence to support this assertion.  The officers entered that residence after announcing themselves and after Petitioner failed to appear.  They had a warrant for Petitioner's arrest.  Ronald Rolle had told the officers that Petitioner shot

---

[2] As Defendants note herein, the state court had found that Plaintiff had no viable Fourth Amendment claim to make.

him.  The shotgun was missing.  Petitioner knew this, and he was in the attic with two loaded weapons.  The officers found shotgun shells on the washer and the opening to the attic was ajar.  Petitioner was not found in the main parts of the house.  When a mirror on a long pole was inserted into the opening, Petitioner pushed it away.  Petitioner was ordered to get out the attic for the safety of everyone present, and he did.  Incident to this arrest, the officers, for their own safety, if nothing else, were authorized to go into the attic to be sure no one else with a weapon was up there.  They found the shotgun and a handgun in the attic, both loaded.  This was entirely proper protective sweep incident to an arrest pursuant to an arrest warrant, even if there had not been a search warrant.  Still, Officer Womble said there was a search warrant and Petitioner has come forward with no evidence to the contrary.

As a consequence, Petitioner's lawyer had no Fourth Amendment claim to make and was not ineffective for pursuing a frivolous motion.  Petitioner had no Fourth Amendment claim to make on appeal, either, and he knew that he waived his defenses when he entered a guilty plea.

[2] Indeed, the argument about an allegedly wrongful accusation of identity theft *tends to prove*, rather than disprove, that Petitioner's shooting of his brother was not accidental.

Doc. 32 in that case, pp. 16-17.  The report and recommendation was adopted.  Doc. 34 in that case.  The Eleventh Circuit denied a certificate of appealability.  Docs. 65 and 66 (mandate).

Plaintiff also challenged the revocation of his probation and the original conviction from which that probation was imposed, state case number 2002-47-AF.  That § 2254 petition was considered in this court's case number 4:06cv293-SPM/WCS, I recommended that Plaintiff's § 2254 petitions from his original conviction and violation of probation be denied.  Doc. 62 in that case.  That report and recommendation is still pending.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). If they do so, the burden shifts to the Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). However, "the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor." WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999) ("We are required to resolve all reasonable inferences and facts in a light most favorable to the nonmoving party.").

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting*

Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The
nonmoving party need not produce evidence in a form that would be admissible as Rule
56(e) permits opposition to a summary judgment motion by any of the kinds of
evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477
U.S. at 324, 106 S. Ct. at 2553.

**Rule 56(e) evidence**

   **Defendant West's Rule 56(e) evidence**

      Summarizing the essentials, Defendant West states that on October 25, 2002, he
was on the United States Marshal's Task Force assigned to execute the state arrest
warrants for Plaintiff's arrest.  Doc. 117, Ex. 1 (doc. 117-2, p. 1 on ECF).  Plaintiff was to
be arrested for an attempted murder of Nicole Robinson and Ronald Rolle, a shooting
that occurred that same day.  Id., p. 2 (p. 2 on ECF).  It was "reported that plaintiff Rolle
was armed as he was reported to have shot his brother that same day."  Id.  West and
other law enforcement officers, wearing uniforms clearly identifying them as law
enforcement officers, knocked on the door and announced themselves as law
enforcement officers, received no answer, and forced entry.  Id.  A protective sweep
was conducted for other persons who might be present.  Id.  Noises were heard coming
from the attic.  Id.  The attic was accessible from the laundry room ceiling through a
sliding piece of wood.  Id.  Loose insulation was on the floor and an open box of twenty-
five 12 gauge shotgun shells were on top of the washing machine.  Id.  West pushed a
small mirror through the attic lid and saw what appeared to be an African American
hand push the lid back down.  Id., p. 3 (p. 3 on ECF).  West called up, asked Rolle if he
had any guns, and he said yes.  Id.  Rolle was ordered out of the attic, came down

without resistence, was handcuffed, placed under arrest, and removed from the house.

*Id*.  West states:

> I then went into [the] attic to look for anyone else.  I found two firearms in
> the attic, a Mossberg 12 gauge shotgun loaded with ammo, a loaded 9mm
> handgun with laser sight, on a pad right at the attic entrance right next to
> where Rolle had been, and within his reach at the time he was up there.  I
> also found there two flashlights, a pillow and a blanket.  I seized the
> weapons as contraband and evidence.

*Id*.  West states:  "No other property was seized from the house other than that already

mentioned herein.  I did not observe any damage to the home or its contents, other than

where the door was forced open."  *Id*.

Government's Exhibit 17 is a declaration under penalty of perjury of Roy

Livingston Rolle, Jr.  Mr. Rolle states that he lives in Ocala, and traveled to Tallahassee

to "check on my house" at 10264 F.A. Ash Way.  Doc. 117, Ex. 17 (doc. 117-3, p. 15 on

ECF).  He further states:

> I proceeded into my investment with extreme caution and found everything
> in the home in total disarray.  Every shoe in every bedroom was thrown
> about on the floor.  Every sofa, couch, chair or table, etc. was moved from
> its resting place and tipped over.  Nothing in the house was as it was a
> week prior when Tommie Taylor and I visited my home I was extremely
> disturbing [sic] to observe my mother's precious belongings tossed about
> with total disregard for our investment.
>
> Finally my side door (east door) had been busted a loose from the frame
> and open.  As in the rest of the house, everything in the garage room was
> thrown about.  There was a Ford car parked near the side door (east door)
> with the driver's side rear window shattered out.

Doc. 117, Ex. 17 (doc. 117-3, p. 15 on ECF).

The home at 10264 F. A. Ash Way is registered to Roy Rolle on the tax rolls.

Doc. 117, Ex. 18 (doc. 117-3, p. 16 on ECF).  Plaintiff had signed a one year's lease for

the year 2002 to rent another home owned by Roy Rolle at 1500 Cleveland Street. Doc. 117, Ex. 20 (doc. 117-3, p. 37).

### Defendant Womble's Rule 56(e) evidence

Defendant Womble states in his affidavit that he is a Sergeant with the City of Tallahassee Police Department, but was assigned as a Deputy United States Marshal on October 25, 2002, to assist with the Task Force arrest of Plaintiff.  Doc. 122, Ex. 1, pp. 1-2 (doc. 122-2, pp. 1-2 on ECF).  Womble states that the officers, in law enforcement uniforms, used a PA (public address speaker) "from outside to get plaintiff to come to the door, but he did not."  *Id.*  After knocking down the door, Womble confirms that no one was found, but the access door in the laundry to the attic was ajar and shotgun shells were on the washing machine.  *Id.*, p. 3 (doc. 122-2, p. 3).  Womble confirms the testimony of West, that West pushed up on the attic door, Plaintiff pushed down, West asked Plaintiff if he had any guns, Plaintiff said yes, West told him to leave the guns in the attic and come down, Plaintiff complied, and Plaintiff was arrested.  *Id.*  The loaded shotgun and Tec-9 millimeter semiautomatic pistol were found by West in the attic.  *Id.*  Womble, like West, states that the only damage he saw to the house was the door of entry.  *Id.*, p. 4 (p. 4 on ECF).

### Plaintiff's Rule 56(e) evidence

Under penalty of perjury, Plaintiff declares that on October 25, 2002, he was sleeping on his couch when he was awakened by his "east door being busted in."  Doc. 134, Ex. Y (doc. 134-2, p. 8 on ECF).  He states he "did not have any weapons in my possession."  *Id.*  He states he "jumped into the attic," and two minutes later, the Marshals located him.  *Id.*  He states:

> I never told them that I had any weapons in the attic.  The attic door
> closed behind me when I climbed down.  Everyone there exited the house
> through the front doors.  There was no legal reason to search my home
> that day.

*Id.*  He states that he sat in the police car and watched the officers enter the house

again.  *Id.*  Plaintiff asserts that Defendant Womble asked him about an AK 47 rifle and

entered the house for a third time.  *Id.*  He states that Defendant "came out and visited."

*Id.*, p. 9 on ECF.  About ten minutes passed, and then several officers came out with a

shotgun, a handgun, and a brown paper bag.  *Id.*  Plaintiff asserts that:

> I stayed at 10264 F.A. Ash way Tallahassee, Florida for 3 nights a week.
> There was no shotgun or 9mm pistol in the attic on October 25, 2002.
> And I did not give no person permission to search my home.  My Father
> owns the home and asked me to stay there a few nights a week in March
> of 2002 after my grandfather had died.

*Id.*

## Legal analysis

Despite repeated rulings by this court, Plaintiff still persists in his claim that the

search and seizure was illegal and, as relief, he should not now be serving 22 years in

prison.  *See generally*, doc. 134.  For example, Plaintiff asserts:  "The Plaintiff will have

his convictions invalidated."  Doc. 134, p. 9.  Further, Plaintiff seeks "[c]ompensatory

damages in the amount of $10,125.00 each day beginning on October 25, '02 until

plaintiff's convictions are called into question by writ of habeas corpus."  *Id.*, p. 12.  He

does not seek any sort of compensatory damages for destruction of personal property.

This court cannot reach the merits of these claims.

The only possible remaining claim is that Plaintiff suffered collateral damage to

*his* property due to an unlawful search, that is, a search that unreasonably exceeded

the scope of a lawful search incident to a lawful arrest by unreasonable destruction of personal or real property.  *See discussion*, Dyer v. Lee, 488 F.3d 876, 879-884 (11th Cir. 2007) (concluding at 884, "for *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory.").  Plaintiff does not, however, allege entitlement to any compensatory damages with respect to damaged personal property.  Plaintiff does recite what he was told about the condition of the house after the search, that the Marshals had

> ruined the home with their search.  They both said that chairs and sofas had been turned over, cloths [sic] had been removed from closets, dresser draws [sic] had been emptied, furniture had been placed in the middle of the rooms, and everything had been out of place.

Doc. 39, p. 7 (p. 9 on ECF).  This, however, fails to state a claim for relief.  It only alleges that chairs and sofas had been turned over, clothes removed from closets, dresser drawers emptied, and furniture moved.  There is no allegation at all that any of this property was damaged or destroyed.

But the more serious defect is standing.  "Standing and ripeness present the threshold jurisdictional question of whether a court may consider the merits of a dispute."  Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006) (citation omitted).  "Both standing and ripeness originate from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies."  *Id.*, at 1204-1205 (citation omitted).  "It is by now axiomatic that standing requires the plaintiff to demonstrate injury in fact, causation, and redressability."  *Id.*, at 1205 (citation omitted).

> The constitutional requirements of standing are that "[1] the plaintiff must have suffered an 'injury in fact' . . . . [2] there must be a causal connection

between the injury and the conduct complained of . . . . and [3] it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' "  The plaintiff bears the burden of establishing each of these elements.

*Id.*, at 1206 (citations omitted).  Since standing is jurisdictional, it must be considered by the court *sua sponte*.  <u>AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc.</u>, 494 F.3d 1356, 1360 (11th Cir. 2007).

On these motions for summary judgment, Plaintiff has failed to come forward with any evidence that he has standing to object to the condition of the home after the search, or to any right to compensation for damage to personal or real property there. The *only* evidence on this subject was submitted by Defendant West, and it comes from Roy Rolle, not from Plaintiff.  The undisputed damage to the door through which the Marshals forcibly entered is damage for which Roy Rolle might complain,[3] but not Plaintiff.  Plaintiff did not own the house.  Plaintiff has presented no evidence that he owned *any* of the furniture, shoes, or clothes that were left in disarray, assuming as the court must, that Roy Rolle's description of such disarray is true.  Roy Rolle spoke of "my investment," not Plaintiff's investment.  Plaintiff said nothing in his own affidavit about his ownership of any of the personal property.  Summary judgment should be granted to Defendants as Plaintiff has failed to prove standing.

If the court adopts this recommendation as to standing, then it need not address any other contention raised in the motions to dismiss or for summary judgment.  Those issues left undecided are: failure to state a claim applying a heightened pleading

---

[3] Indeed, if it is true that Plaintiff heard the law enforcement officers announce by a PA speaker their presence and intent to arrest him for a very recent attempted murder, and he failed to come out immediately, causing them to have to break down the door, Roy Rolle arguably has a claim against Plaintiff.

requirement; qualified immunity; lack of standing to present a Fourth Amendment claim at all; and collateral estoppel due to his guilty plea to possession of a firearm as a convicted felon and admission of the violation of probation, and the state court's ruling on this Fourth Amendment claim on his postconviction motion.

## 28 U.S.C. § 1915(e)(2)(i) and (ii)

Plaintiff has persisted in this litigation despite his lack of standing and the bar of Heck. He has known that he could not obtain relief that would necessarily call into question the validity of his convictions. He has not come forward with any evidence that he has standing to complain about the movement of furniture in the house during the search or the damage to the door. Despite his current assertion that there were no guns in the attic, he was convicted of possessing those firearms. This suit has been pursued from the outset with malice and it is frivolous.

## Conclusion

Accordingly, it is **RECOMMENDED** that the court **GRANT** Defendant's motions for summary judgment, docs. 116 and 120, as Plaintiff has failed to come forward with evidence to show standing to bring this suit, and **DIRECT** that the Clerk enter judgment in favor of Defendants and note upon the docket that this case was malicious and frivolous pursuant to 28 U.S.C. § 1915(3)(2)(B)(i) and (ii).

**IN CHAMBERS** at Tallahassee, Florida, on April 15, 2009.


s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.